UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BETTY J. STRAIN,<br><br>        Plaintiff,<br><br>   v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security Administration,<br><br>        Defendant.<br>_____ | Civil No. 04-07827 (Mc)<br><br>MEMORANDUM OF DECISION<br>AND ORDER IN A<br>SOCIAL SECURITY CASE |

    The plaintiff, Betty J. Strain, filed the present action for review of a final determination of the Commissioner of Social Security (the "Commissioner"). For the reasons set forth below, the court finds that the decision of the Commissioner is supported by substantial evidence. The matter, therefore is affirmed.

**BACKGROUND**

    The plaintiff originally filed an application for Disability Insurance Benefits under the Social Security Act (the "Act") on July 11, 1992. [Administrative Record ("AR") 112.] The Commissioner denied the application initially and on reconsideration. [AR 130, 152.] At the plaintiff's request, administrative hearings were held

before Administrative Law Judge Richard A. Urbin (the "ALJ") on February 27, 1996.  [AR 66.]  On May 10, 1996, the ALJ filed a decision concluding that the plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision.  [AR 51-58.]  Thereafter, the Appeals Council denied the plaintiff's request for review of the ALJ's decision.  [AR 3.]

The plaintiff next filed a request for judicial review in this court in Case No. CV 98-9277-EE.  On May 19, 2003, pursuant to a stipulation by the plaintiff and the respondent, this court remanded the case to the Commissioner for further proceedings.  [AR 393.]

On June 20, 2000, another administrative hearing was held before the ALJ.  [AR 357.]  On March 22, 2001, the ALJ filed a decision concluding that the plaintiff was not under a disability at any time through the date of the decision.  [AR 338, 341.]  Thereafter, the Appeals Council denied the plaintiff's request for review of the ALJ's decision.  [AR 320.]

The plaintiff next filed the present action.  The plaintiff and the Commissioner have consented to proceed before a United States Magistrate Judge.  The parties have entered into a Joint Stipulation setting forth their arguments.

### STANDARDS OF REVIEW

The court must sustain the findings of the Commissioner unless: (a) they are not supported by substantial evidence in the record as a whole; or (b) the Commissioner applied an improper legal standard. See 42 U.S.C. § 405(g); Gordon v. Secretary of Health and Human Services, 803 F.2d 1071, 1072 (9th Cir. 1986).  Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28

2

1  L.Ed.2d 842 (1971); <u>Desrosiers v. Secretary of Health and Human</u>
2  <u>Services</u>, 846 F.2d 573, 576 (9th Cir. 1988). "Substantial evidence" is
3  evidence a "reasonable mind might accept as adequate to support a
4  conclusion." <u>Richardson v. Perales</u>, 402 U.S. at 402; <u>Gordon v.</u>
5  <u>Secretary of Health and Human Services</u>, 803 F.2d at 1072.
6       This Court must review the record as a whole and consider adverse
7  as well as supporting evidence. <u>See</u> <u>Green v. Heckler</u>, 803 F.2d 528,
8  529-530 (9th Cir. 1986).  Where evidence is susceptible of more than
9  one rational interpretation, the court must sustain the Commissioner's
10 decision. <u>See</u> <u>Gallant v Heckler</u>, 753 F.2d 1450, 1453 (9th Cir. 1984).

## THE FIVE-STEP SEQUENTIAL EVALUATION

12      The Commissioner has established a five-step sequential
13 evaluation for determining whether a person is disabled.  First, the
14 Commissioner determines whether the person is engaged in "substantial
15 gainful activity."  If so, the Commissioner denies disability
16 benefits.  Second, if the person is not so engaged, the Commissioner
17 determines whether the person has a medically severe impairment or
18 combination of impairments.  If the person does not have a severe
19 impairment or combination of impairments, the Commissioner denies
20 benefits.  Third, if the person has a severe impairment, the
21 Commissioner determines whether the impairment meets or equals one of
22 a number of "listed impairments."  If the impairment meets or equals a
23 "listed impairment," the Commissioner conclusively presumes that the
24 person is disabled.  Fourth, if the impairment does not meet or equal
25 the "listed impairments," the Commissioner determines whether the
26 impairment prevents the person from performing past relevant work.  If
27 the person can perform past relevant work, the Commissioner denies
28 benefits.  Fifth, if the person cannot perform past relevant work, the

burden shifts to the Commissioner to show that the person is able to perform other kinds of work. The person is entitled to disability benefits only if he or she is unable to perform other work. See 20 C.F.R. § 404.1520; Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987).

## FINDINGS OF THE ALJ

The plaintiff was born on March 22, 1941. [AR 112.] The plaintiff completed high school. [AR 120.] The plaintiff has past work experience as a bookkeeper and officer manager. [AR 120.] The plaintiff alleges that she is unable to work because of pain in both of her hips, her right leg and her back. [AR 116, 417.] The plaintiff alleges an onset date of January of 1993. [AR 76-77.]

The ALJ found that the plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. [AR 343, 353.] The ALJ found that the medical evidence established that the plaintiff had the following severe impairments: degenerative joint disease of the lumbar spine with S1 radiculopathy and subluxation of L4-5, degenerative changes of the right knee, pernicious anemia, hypothyroidism, hyperlipemia, menopausal syndrome and diabetes mellitus. [AR 343.] The ALJ concluded that these impairments whether considered singly or in combination did not meet or equal any of the impairments listed in the Act's listing of impairments.[1] See 20 C.F.R. Pt. 404, Subpt. P, Pt. 1. [AR 344, 353.]

The ALJ found that the plaintiff had the residual functional capacity to lift and carry twenty pounds occasionally and ten pounds

---

[1] The Act's listing of impairments sets forth certain impairments which are presumed to be of sufficient severity to prevent the performance of work. 20 C.F.R. § 416.925(a).

4

frequently and to sit, stand or walk for six hours in an 8-hour workday. [AR 348, 353.] The ALJ found that the plaintiff had no other limitations. [AR 353.]

The ALJ found that the plaintiff could perform her past relevant work as a bookkeeper as she actually performed it and as it is generally performed and as an officer manager as it is generally performed. [AR 352, 353.] The ALJ concluded that the plaintiff was not under a disability, as defined by the Act, at any time through the date of the decision. [AR 352, 353.]

## **THE PLAINTIFF'S CONTENTIONS**

1. The plaintiff contends that the ALJ failed properly to address the credibility of Jeffrey A. Strain. [Joint Stipulation, p. 2.]

2. The plaintiff contends that the ALJ failed properly to address the credibility of the plaintiff. [Joint Stipulation, p. 10.]

3. The plaintiff contends that the ALJ failed to give proper weight to the opinion of her treating physician. [Joint Stipulation, p. 20.] The plaintiff also contends that the ALJ improperly failed to indicate the amount of time that the plaintiff could sit at one time. [Joint Stipulation, p. 23.]

4. The plaintiff contends that the ALJ improperly considered the opinion of Anant Ram, M.D. [AR 27.]

## **DISCUSSION**

### **The Credibility of Jeffrey A. Strain**

The plaintiff contends that the ALJ failed properly to address the credibility of Jeffrey A. Strain. [Joint Stipulation, p. 2.]

Mr. Strain is the son of the plaintiff. [AR 382.] Mr. Strain lived with the plaintiff until 1998. [AR 383.] Mr. Strain testified

5

about his observations of the plaintiff until 1998. [AR 383.] Mr. Strain testified that the plaintiff's leg and back bothered her all of the time. [AR 104, 383.] The plaintiff spent most of her day laying down or in a recliner. [AR 104, 383.] The plaintiff could not sit upright at a computer for more than 30 minutes because of pain in her back and leg. [AR 107, 384.] After that she must get up and move. [AR 384.] The plaintiff could not do many household chores. [AR 105, 385.] She could wash a "couple dishes" and cook if it did not require her to stand at the stove. [AR 105, 385.] Mr. Strain had to accompany the plaintiff to the market because the plaintiff could not push a shopping cart. [AR 106, 385.]

Mr. Strain also testified that he worked during the time he lived with the plaintiff. [AR 386.] Mr. Strain did not contribute to the rent. [AR 387.] Mr. Strain paid for his own personal things. [AR 387.] Mr. Strain knew that the plaintiff did not have medical insurance but did not offer to pay for her to seek medical treatment. [AR 387.] Mr. Strain did not make any effort to locate medical treatment for the plaintiff because "I wouldn't know how to go about all of that." [AR 387.] Since Mr. Strain moved out of the plaintiff's house in 1998, he also has not contributed to her household income or offered to pay for medical treatment. [AR 387.] Mr. Strain supports an eight-year-old daughter. [AR 388.]

The ALJ rejected the testimony of Mr. Strain. [AR 351.] The ALJ noted that Mr. Strain lived with the plaintiff and witnessed her pain but "relied on the plaintiff's support and did nothing to reduce household expenses to enable his mother [the plaintiff] to seek treatment." [AR 351.] The ALJ found the testimony of Mr. Strain not credible because "If his mother was in great pain, I anticipate that

he would have contributed to his own support and thereby helped her afford medical treatment." [AR 351.]

The ALJ must consider lay witness testimony. See Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993). Descriptions by friends and family members in a position to observe the plaintiff's symptoms and daily activities have routinely been treated as competent non-medical evidence. Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987); see also Crane v. Shalala, 76 F.3d 251 (9th Cir. 1996). "If the ALJ wishes to discount the testimony of the lay witnesses, he must give reasons that are germane to each witness." Dodrill v. Shalala, 12 F.3d at 919; Schneider v. Commissioner, 223 F.3d 968, 975 (9th Cir. 2000).

The reason presented by the ALJ for rejecting the testimony of Mr. Strain is rational and germane to Mr. Strain. The ALJ properly found Mr. Strain not credible.

**The Credibility of the Plaintiff**

The plaintiff contends that the ALJ failed properly to address the credibility of the plaintiff. [Joint Stipulation, p. 10.]

The plaintiff testified that she cannot work because of problems with her back, right leg and shoulders. [AR 371.] The plaintiff suffers from lower back and right leg pain every day. [AR 379-380.] On a scale of one to ten, ten being "very, very severe," the plaintiff's lower back pain varies from three to ten. [AR 379.] The plaintiff's right leg pain varies from three to nine. [AR 380.] The plaintiff testified that she could sit for up to thirty minutes before her lower back and leg pain would force her to move. [AR 365, 375.] The plaintiff could sit for a total of one hour fifteen minutes in an eight-hour workday. [AR 376.] The plaintiff could walk only five

7

minutes before pain in her back and leg would force her to stop.  [AR 366.]  The plaintiff also suffers from pain in her shoulders which limits her to working up to 20 minutes on a computer after which she must rest for two to three hours before returning to work on a computer.  [AR 370.]

To relieve her pain, the plaintiff lays down with a heating pad or sits on a recliner.  [AR 366.]  The plaintiff takes Ibuprofen for her pain every day which "takes the edge off of it."  [AR 367.]  The plaintiff does not take any other medications because she cannot afford them, they were not very helpful and made her sick to her stomach.  [AR 367.]  The plaintiff has not sought medical treatment for her back and leg because she has no insurance and cannot afford treatment.  [AR 367.]  The plaintiff also sought medical help from the county "welfare office" but did not receive any.  [AR 367-368.]

The plaintiff receives about $735.00 per month from her deceased husband's pension.  [AR 368.]  The plaintiff's daughter lives with her and helps out with groceries and other things.  [AR 368.]  The plaintiff treats with Dr. Marin.  [AR 369.]  Dr. Marin treats the plaintiff for her thyroid problem, high cholesterol, diabetes and hypertension but does not treat her for her back problems.  [AR 369.]

The plaintiff performs very few household chores.  [AR 374.]  She does a little vacuuming and cooking.  [AR 374.]  The plaintiff also shops a little but cannot push a shopping cart.  [AR 374.]  The previous year, the plaintiff traveled to Pennsylvania to see her sister who was ill.  [AR 373.]  The plaintiff took a 4-1/2 hour airplane flight to get there.  [AR 373.]  The plaintiff sat in an aisle seat, extended her leg and moved around a lot.  [AR 374.]
\\\

The ALJ noted that the plaintiff had medically determinable impairments that would reasonably be expected to cause some of her allegations of pain but found the plaintiff's allegations of pain and other symptoms not fully credible. [AR 351.] The ALJ provided many reasons in support of his credibility finding. [AR 349-351.] The ALJ noted that the plaintiff had successfully completed various classes which lasted four hours and required "a great deal of consecutive sitting." [AR 349.] The ALJ acknowledged that the plaintiff stated that she had to stand up during the classes but found that the plaintiff's successful completion of the classes showed that the plaintiff could sit for more than a few minutes at a time and concentrate notwithstanding her pain. [AR 350.] The ALJ also relied on the plaintiff's ability to endure a four- or five-hour flight to visit her sister. [AR 350.]

The ALJ also noted that the plaintiff refused surgery and injections and failed to follow medical advice to lose weight and exercise. [AR 350.] The ALJ wrote, "If [the plaintiff's] pain was already as severe as it could be, I question why she did not seek to alleviate it in any way possible." [AR 350.]

The ALJ also noted that the plaintiff did not seek treatment for her back and leg pain after June of 1993. [AR 351.] The plaintiff stated that she could not afford treatment but during subsequent treatment from Dr. Richard H. German and Dr. Julio C. Marin, the plaintiff did not even mention her back or leg pain. [AR 351.] The ALJ wrote that if her pain were as severe as the plaintiff described, "I cannot believe that she would fail to mention them to medical professionals. Moreover, she requires only over-the counter pain medication." [AR 351.]

A plaintiff who alleges disability based on subjective symptoms must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. See Cotton v. Bowen, 799 F.2d 1403, 1407-08 (9th Cir. 1986); Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991). The Cotton test requires only that the causal relationship between the impairment and the symptom be a reasonable inference, not a medically proven phenomenon. The plaintiff only needs to show that the impairment could reasonably have caused some degree of the symptom. See Howard v. Heckler, 782 F.2d 1484, 1488 (9th Cir. 1986)(noting that the Ninth Circuit has "never required that the medical evidence identify an impairment that would make the pain inevitable"). Once the plaintiff has satisfied the Cotton test and there is no evidence of malingering, the ALJ may reject the plaintiff's testimony regarding the severity of her symptoms only if he or she makes specific findings stating clear and convincing reasons for doing so. Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)(citing Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993)). The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion. Id.

In order to determine whether the plaintiff's testimony regarding the severity of his or her symptoms is credible, the ALJ may consider the following, for example: (1) ordinary techniques of credibility evaluation, such as the plaintiff's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the plaintiff that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the plaintiff's daily

10

activities. Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996); see, e.g., Fair v. Bowen, 885 F.2d 597, 602-04 (9th Cir. 1989); Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991). The ALJ must also consider other factors including the nature, location, onset, duration, and frequency of the plaintiff's symptoms, precipitating and aggravating factors, functional restrictions caused by the symptoms, type, dosage, effectiveness and side-effects of any medications, treatment other than medication, and other measures used to relieve symptoms. See Smolen, 80 F.3d at 1284; Bunnell, 947 F.2d at 346; 20 C.F.R. 404.1529(c)(3); Social Security Ruling 96-7p.

As noted by the ALJ, the plaintiff had medically determinable impairments that would reasonably be expected to cause some of her allegations of pain. This court must determine whether the ALJ provided clear and convincing reasons for rejecting the plaintiff's credibility. Among the reasons provided by the ALJ was the plaintiff's failure to seek treatment for her back and leg pain after 1993. The plaintiff attempted to explain her failure to seek treatment by stating that she could not afford treatment.

Normally, disability benefits may not be denied because of the plaintiff's failure to obtain treatment he or she cannot afford. Gamble v. Chater, 68 F.3d 319, 321 (9th Cir. 1995). However, the present case is exceptional because, during the period the plaintiff failed to seek treatment for her leg and back pain, she was treating with Dr. German and Dr. Marin for other medical problems. [AR 462 et seq. (treatment notes of Dr. German), 501 et seq. (treatment notes of Dr. Marin).] The ALJ reasonably stated, "If the claimant's symptoms were as limiting as those she . . . describe[s], I cannot believe that she would fail to mention them to medical professionals." [AR 351.]

In light of the fact that the plaintiff saw Dr. German and Dr. Marin for other medical problems, her long time failure to mention her leg and back pain to Dr. German and Dr. Marin or otherwise to seek treatment for her leg and back pain is inexplicable. The fact that the plaintiff treated with Dr. German and Dr. Marin also indicates that the plaintiff was able to obtain medical treatment for her other problems. The plaintiff's failure to seek treatment for her leg and back pain constitutes a clear and convincing reason supporting the ALJ's rejection of the plaintiff's testimony. The ALJ properly rejected the plaintiff's testimony regarding her leg and back pain.[2]

**Weight Given to the Opinion of Dr. Helfand**

The plaintiff contends that the ALJ failed to give proper weight to the opinion of her treating physician, Dr. James Helfend. [Joint Stipulation, p. 20.]

Dr. Helfend treated the plaintiff until Dr. Helfend died in October of 1995. [AR 83-84.] On September 18, 1995, Dr. Helfend opined that the plaintiff could lift or carry up to two pounds for no more than half an hour a day, stand or walk for only a few minutes at a time and could not sit for any length of time. [AR 246-247.] Dr. Helfend also opined that the plaintiff could not climb, stoop, crouch

---

[2] The plaintiff also contends that, in making his credibility determination, the ALJ improperly failed to consider evidence provided by a Social Security District Office employee. [Joint Stipulation, p. 14.] The record shows that, on August 11, 1992, an employee observed the plaintiff to have difficulty sitting and walking. [AR 123.] When evaluating allegation of pain, the ALJ must consider observations of Social Security Administration employees. 20 C.F.R. § 404.1529(c)(3). However, the plaintiff alleges an onset date of January of 1993, about four months after the employee made his or her observations. Accordingly, the relevance of the employee's observations was limited. The ALJ did not improperly fail to consider the employee's observations.

1  or crawl and could only occasionally balance, kneel or bend.  [AR
2  247.]
3      Dr. Jalil Rashti performed an orthopedic evaluation of the
4  plaintiff in November of 1995.  [AR 266.]  Dr. Rashti noted that the
5  plaintiff had a slight limp.  [AR 273.]  Dr. Rashti found that the
6  plaintiff had degenerative changes of the lumbar spine with a mild
7  bulge at L4-5 and possible S1 radiculopathy.  [AR 273.]  Dr. Rashti
8  opined that the plaintiff could lift or carry up to 20 pounds
9  occasionally and ten pounds frequently, and stand, walk or sit each
10 for six hours in an eight-hour workday.  [AR 274-275.]  Dr. Rashti
11 found no other limitations to the plaintiff's ability to perform work-
12 related activities.  [AR 275.]
13     The ALJ rejected the opinion of Dr. Helfend.  [AR 348.]  The ALJ
14 noted, among other things, that there is no evidence that Dr. Helfend
15 treated the plaintiff for her orthopedic complaints, that the
16 plaintiff did not mention her orthopedic problems to three different
17 physicians and that Dr. Helfend's opinion was inconsistent with those
18 of examiners with specialties in orthopedic medicine.  [AR 348.]  The
19 ALJ relied on the opinion of Dr. Rashti, one of those orthopedic
20 specialists.  [AR 348, see 276.]  The ALJ found that the plaintiff
21 could lift or carry up to 20 pounds occasionally and ten pounds
22 frequently, and stand, walk or sit each for six hours in an eight-hour
23 workday.  [AR 348.]
24     A treating physician's opinion is entitled to greater weight than
25 that of an examining physician.  Andrews v. Shalala, 53 F.3d 1035,
26 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751
27 (9th Cir. 1989)); Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir.
28 1987).  "The treating physician's opinion is not, however, necessarily

13

conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d at 751 (citing Rodriguez v. Bowen, 876 F.2d 759, 761-62 n.7 (9th Cir. 1989)).

The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d at 751). A medical opinion is considered uncontroverted if all the underlying medical findings in the record of plaintiff's impairments are similar. Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). To reject the uncontroverted opinion of a claimant's physician, the ALJ must present clear and convincing reasons for doing so. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d at 751); Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir. 1984). Even if the treating physician's opinion is contradicted, the Commissioner may not reject the opinion without providing "specific and legitimate reasons" for doing so which are supported by substantial evidence. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).

Where the treating physician's opinion is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence on which the ALJ may rely. Andrews v. Shalala, 53 F.3d at 1041.

Here, the opinion of Dr. Helfend was contradicted by the opinion of Dr. Rashti. Dr. Rashti conducted an orthopedic examination of the plaintiff. [AR 266 et seq.] The opinion of Dr. Rashti was based upon his own independent clinical findings from his examination of the plaintiff. [AR 266 et seq.] The ALJ properly relied on the opinion

14

of Dr. Rashti.  [AR 348.]  See Andrews v. Shalala, 53 F.3d at 1041.
The ALJ properly rejected the opinion of Dr. Helfend.

**The Amount of Time the Plaintiff Could Sit**

The plaintiff also contends that the ALJ improperly failed to indicate the amount of time that the plaintiff could sit at one time. [Joint Stipulation, p. 23.]  As noted above, the ALJ properly relied on the opinion of Dr. Rashti, an examining physician.  Dr. Rashti opined that the plaintiff could sit for up to six hours in an eight-hour workday.  [AR 275.]  Dr. Rashti did not place any other limitation on the plaintiff's ability to sit.  [AR 275.]  The ALJ properly relied on the opinion of Dr. Rashti.[3],[4]

**The ALJ's Consideration of the Opinion of Dr. Ram**

The plaintiff contends that the ALJ improperly considered the opinion of Dr. Anant Ram.  [AR 27.]  The plaintiff appears to be contending that the ALJ may not consider Dr. Ram's opinion because the plaintiff was not able to cross-examine, or submit interrogatories to, Dr. Ram.  [AR 574.]

Dr. Ram examined the plaintiff on June 7, 1999.  [AR 478.]  Dr. Ram found that the plaintiff "would be unrestricted."  [AR 482.]

The ALJ stated, "I accord less weight to the opinion of Dr. Ram than to the opinion of Dr. Rashti."  [AR 348.]  The ALJ noted that Dr. Ram did not review all of the evidence submitted to him.  [AR 348.]

---

[3] As discussed above, the ALJ properly rejected the plaintiff's pain testimony which included her allegation that she could not sit for more than 30 minutes at a time.

[4] The absence of a specific finding on the amount of time that the plaintiff could sit at one time does not mean that the ALJ failed to make a finding.  Rather, it appears that the ALJ found no limitation on the plaintiff's ability other than the total amount of time she could sit in an eight-hour workday.

15

1  The ALJ concluded, "Given Dr. Ram's incomplete review of the evidence,
2  I have little confidence in his assessment of the [plaintiff's]
3  residual functional capacity.  I note, however, that his objective
4  observations are very similar to those of Dr. Rashti."  [AR 348.]
5      The plaintiff relies on Solis v. Schweiker, 719 F.2d 301 (9th
6  Cir. 1983), in which the Ninth Circuit Court of Appeals held that
7  "where the physician is a crucial witness whose findings substantially
8  contradict the other medical testimony, and when as in this case
9  interrogatories are an inadequate substitute for cross-examination,
10 the claimant has been denied procedural due process if his request to
11 subpoena the physician is not granted."  Solis v. Schweiker, 719 F.2d
12 at 301.  Here, Dr. Ram was not available for cross-examination and did
13 not respond to interrogatories.
14     The holding of Solis does not apply here because Dr. Ram was not
15 a crucial witness.  The ALJ clearly stated that he had "little
16 confidence" in Dr. Ram's opinion.  The ALJ clearly stated that he
17 based his findings regarding the plaintiff's residual functional
18 capacity on Dr. Rashti's opinion, not Dr. Ram's.  [AR 348.]  The ALJ
19 did not give improper weight or otherwise improperly consider the
20 opinion of Dr. Ram.
21 \\\
22 \\\
23 \\\
24 \\\
25 \\\
26 \\\
27 \\\
28 \\\

16

**CONCLUSION**

After careful consideration of the pleadings, the transcript of the record, and in accordance with the foregoing discussion, the magistrate judge finds that the decision of the Commissioner is supported by substantial evidence and that the Commissioner has applied proper legal standards.

**ORDER**

IT IS ORDERED that Judgment be entered in favor of the Commissioner and against the plaintiff.

Dated: January 17, 2006

```
                            /s/
                  JAMES W. McMAHON
                  United States Magistrate Judge
```